UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

ROBERT CHARLES BREWER, JR.

CASE NO. 14-414-JJB-SCR

VERSUS

JASON ARD, ET AL.

**RULING ON MOTION TO DISMISS**

Defendants, Jason Ard and Major Perry Rushing, move for this Court to dismiss all claims asserted against them under 42 U.S.C. § 1983 by Plaintiff, Robert Charles Brewer, Jr. (doc. 1). All responsive briefs were considered for purposes of this ruling.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A pleading is plausible when the plaintiff pleads "factual content" that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 663. When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (quoting *Twombly*, U.S. at 557 (2007)). "In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff." *Davis v. Bellsouth Telecomm.*, 2012 WL 2064699, at *1 (M.D. La. June 7, 2012) (citing *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996)).

1

**FACTUAL ALLEGATIONS**

Plaintiff was detained, awaiting trial, from July 3 to December 27, 2013 (doc. 1, at 3).[1] On April 12, 2013, prior to his detention at Livingston Parish Detention Center, Plaintiff was severely injured when he, as a bystander, was shot. When Plaintiff was arrested his jaw was wired with various plates and hardware. Plaintiff had a feeding tube in his stomach, a brace on and other various hardware in his knee, a tracheostomy stoma in his throat, and he was only ambulatory with the aid of a walker. Plaintiff was taking pain relief medicine and antibiotics. Plaintiff presented paperwork to the detention center showing he had appointments scheduled at LSU Medical Center for follow-up care. Plaintiff alleges that he missed medical appointments and received lax medical care. These actions and inactions allegedly caused Plaintiff to suffer improper healing, irreversible and painful damage, and infection, as well as, mental anguish (doc. 1, at 4-5).

Plaintiff asserts claims under 42 U.S.C. § 1983 against various Defendants. As to Major Perry Rushing, John Doe Deputies, and John Doe Healthcare Providers, Plaintiff alleges that these Defendants had actual notice of Plaintiff's injuries and acted with deliberate indifference to his rights, health, and safety (doc. 1, at 5). Plaintiff argues that his constitutional right to adequate medical care during the course and scope of his detention was violated. Plaintiff also asserts claims under 42 U.S.C. § 1983 against Major Perry Rushing and Jason Ard, who, during the relevant times, served as Warden and duly elected Sheriff of Livingston Parish, respectively. It is Plaintiff's argument that the policies implemented explicitly or implicitly by these two Defendants resulted in the failure to provide Plaintiff with reasonable medical care (doc. 1, at 5). Plaintiff claims that at the relevant times, Major Perry Rushing, John Doe Deputies, and John Doe Healthcare Providers were employees and/or acting under the direction and supervision of

---

[1] An erroneous release date was stated in the Complaint. The correct date is reflected herein (doc. 16, at 12).

employees; thus, their actions and unlawful conduct are imputed to the Parish of Livingston and the Livingston Sheriff Department under the doctrine of *respondeat superior* (doc. 1, at 6).

Defendants, Ard and Rushing, consider these allegations as stated in the Plaintiff's complaint and urge that they are nothing more than conclusory allegations, insufficient to state a cause of action against these Defendants. Accordingly, Defendants urge that Plaintiff's claims should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## **DISCUSSION**

   i.   *Official Capacity: Sheriff Ard and Major Rushing*

Defendants claim Plaintiff failed to state a claim against Sheriff Ard and Major Rushing in each Defendant's official capacity (doc. 10-2, at 7 and 15). The United States Supreme Court has made clear that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity…[thus,] a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself" (doc. 10-2, at 7-8 citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). It is undisputed that in order for Plaintiff to establish liability based on Defendants' official capacity, there are three elements that must be established: "a policy maker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom" (doc. 10-2, at 8 citing *Zarnow v. City of Wichita Falls, TX*, 614 F.3d 161 (5th Cir. 2010), citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

It is undisputed that the first element is established in that Sheriff Ard was a policymaker for the Livingston Parish Sheriff's Office. Major Rushing, however, is merely an employee of the municipality (doc. 10-2, at 15). Major Rushing was Warden of the Livingston Parish Detention Center at the time of Plaintiff's detention, but there are no factual allegations

suggesting that this position made Major Rushing a policymaker for the Livingston Parish Sheriff's Office (doc. 10-2, at 15). Plaintiff's Opposition concludes that Major Rushing is "plausibly more of a policymaker than Sheriff Ard…addressing the individual medical needs of a detainee, coordinating transportation to and from medical appointments on behalf of prisoners, and distribution of pharmaceuticals to detention center residents" (doc. 16, at 18). Plaintiff attempts to support his conclusion by citing a United States Supreme Court decision that merely provides an example of when someone other than the Sheriff can be considered the policymaker for the Sheriff's Office. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, n.12 (1986). *Pembaur* illustrates an important distinction between decision-making and policy-making authority. Major Rushing may have had decision-making authority as the Warden, but that does not grant him the authority to establish policies within the Livingston Parish Sheriff's Office (doc. 19, at 13).

Defendants argue that the second element is not satisfied because Plaintiff must show the existence of one of the following in order to establish the existence of an official policy:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated the policymaking authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

(doc. 10-2, at 8 citing *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)). Plaintiff's Complaint concludes that the detention center has "explicitly or implicitly implemented policies, customs or practices which resulted in the failure to provide the Plaintiff reasonable medical

care," such as, transportation of Plaintiff out of detention center for follow-up care appointments and administration of prescribed medication (doc. 1, at 5). Nowhere does Plaintiff claim that this alleged "policy" was an officially adopted policy to satisfy the first definition. Further, the second definition of a policy as "[a] persistent, widespread practice of city official or employees, which … is so common and well settled as to constitute a custom that fairly represents municipal policy" is not satisfied since the allegations are that Defendants refused proper medical care to only this particular Plaintiff (doc. 10-2, at 9). Plaintiff has not alleged that Defendants or their deputies failed to provide treatment to any other inmate or that it was even the responsibility of the Sheriff or his deputies to transport the inmates for treatment (doc. 19, at 4). Plaintiff asserts that the denial of medical care occurred multiple times regarding this individual Plaintiff, presumably wanting this Court to imply a widespread pattern or practice representing official policy based on the treatment of the Plaintiff alone (doc. 16, at 10-11).

Plaintiff asks this Court to consider the allegations that this one detainee was denied transportation to follow-up medical care, certain medications, and general medical care. Plaintiff then asks this Court to conclude from these allegations that Plaintiff's failure to receive medical treatment was the result of an official policy. There are no factual allegations of an official policy adopted and promulgated by an officer with policymaking authority. The factual allegations that one detainee, Plaintiff, was denied medical care is insufficient to suggest that there is a persistent, widespread practice of employees sufficient to constitute a custom equivalent to a policy of the municipality. Plaintiff has failed to sufficiently plead facts making the existence of an official policy or custom plausible. As a result, Plaintiff fails to sufficiently plead facts to make an official-capacity claim under 42 U.S.C. § 1983 and against Sheriff Ard or Major Rushing plausible.

*ii.     Individual Capacity: Sheriff Ard and Major Rushing*

Defendants also claim Plaintiff failed to state a claim against Sheriff Ard and Major Rushing in each Defendant's individual capacity (doc. 10-2, at 12 and 16). To state a 42 U.S.C. § 1983 claim against one in his individual capacity, Plaintiff must sufficiently allege that while acting under color of state law, Defendants were personally involved in the deprivation of a right secured by the laws of the United States or that Defendants' wrongful actions were causally connected to such a deprivation (doc. 10-2, at 13 and 16 citing *Khansari*, 2014 WL 1401857 (citing *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008))).

Plaintiff has not alleged any specific facts as to how any personal action or inaction by Sheriff Ard or Major Rushing caused Plaintiff to be denied transportation to the medical facility or to be denied his medication. Plaintiff presumes that Sheriff Ard had actual knowledge of Plaintiff's condition, yet, failed to take action or order his personnel to take action to address these serious needs (doc. 16, at 15). Defendants, to the contrary, claim that the Complaint never alleged Sheriff Ard's notice of Plaintiff's condition or of a constitutional violation. The only allegation in the Complaint that a Defendant had notice of a constitutional violation or of Plaintiff's condition were part of "Count 1" and not asserted against Sheriff Ard (doc. 1, at 4-5).

Plaintiff does not assert any allegations that Major Rushing was personally involved with the alleged refusal to transport the Plaintiff for follow-up medical care, in the withholding of Plaintiff's medication, or in any action or inaction that deprived Plaintiff of his constitutional rights. Further, Plaintiff does not allege that Major Rushing had the authority or responsibility to direct the medical care of inmates or that he was, in any other way, causally connected to the deprivation of Plaintiff's constitutional rights (doc. 10-2, at 17). Plaintiff also makes no factual allegation that Major Rushing personally failed to train or supervise deputies that were his

responsibility or how any lack of training or supervision caused the constitutional violations alleged by Plaintiff (doc. 10-2, at 17). Allegation would have to show that Major Rushing had notice of a pattern of acts similar to what ultimately transpired, and despite such notice Major Rushing failed to train or supervise or that the highly predictable consequence of his failure to train or supervise would result in injury to Plaintiff (doc. 10-2, at 18).

## CONCLUSION

Plaintiff's claims against Defendants, Sheriff Ard and Major Rushing, in their official capacity under 42 U.S.C. § 1983 must fail because Plaintiff failed to allege facts to support any official policy or widespread custom of Sheriff's office caused the alleged constitutional violation. Similarly, Plaintiff's claims against these same Defendants in their individual capacity must fail. Plaintiff failed to allege any facts suggesting that the Defendants were personally involved or that their actions as supervisors demonstrate deliberate indifference to Plaintiff's rights.

In accordance with Fifth Circuit jurisprudence, the Plaintiff is granted 20 days to file an Amended Complaint to cure the deficiencies noted herein, or the claims asserted against Defendants, Jason Ard and Major Rushing, will be dismissed.

Signed in Baton Rouge, Louisiana, on January 14, 2015.

_____
**JUDGE JAMES J. BRADY**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**